Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5327 | **DATE** | 3/10/2003 |
| **CASE TITLE** | Mark Cohen et al. Vs. AM General Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the foregoing reasons, defendant's motion for summary judgment is denied. Status hearing set for March 25, 2003 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | MAR 1 1 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| WAH | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT  03 MAR 10 PM 3: 50  FILED-ED 10  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK COHEN and FIRST CHOICE    )
MEDICAL,    )
    )
       Plaintiff,    )
    )
       vs.    )    No. 02 C 5327
    )
AM GENERAL CORPORATION,    )
    )
       Defendants.    )

**DOCKETED**

MAR 1 1 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mark Cohen and First Choice Medical (First Choice) filed a complaint in state court against defendant AM General Corporation (AM) alleging breach of express and implied warranties and revocation of acceptance. Defendant removed the case to the district court and filed a motion for summary judgment, arguing that the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. § 2301 *et seq.*, does not apply to lease transactions and that plaintiffs cannot demonstrate damages as a matter of law. For the following reasons, defendant's motion for summary judgment is denied.

## BACKGROUND

On July 6, 1999, plaintiffs arranged to lease a new 1999 American General Hummer (Hummer) from Naperville Hummer Jeep for a total lease price of $84,000. In order to facilitate this transaction Mister Leasing Corporation (Mister Leasing) purchased the Hummer. Plaintiffs had the option to purchase the vehicle at the conclusion of the lease period. Al Jordan, the vice-president of Mister Leasing, maintains that the purchase of the Hummer was for the purpose of leasing it to plaintiffs and that without such a plan Mister

$\mathcal{BS}$

Leasing would not have purchased the vehicle. Mister Leasing transferred its rights in American General's factory warranty to the plaintiffs.

Plaintiffs allegedly experienced numerous problems with the Hummer. Pursuant to the warranty, plaintiffs tendered the vehicle to authorized dealers of Hummers, who serviced the vehicle at no cost to plaintiffs. Plaintiffs filed their complaint in the Circuit Court of Cook County on June 5, 2002, alleging breach of the warranty and revoking acceptance of the vehicle. On July 11, 2002, plaintiffs chose to trade in the vehicle, receiving $49,000 for the Hummer.

Defendants filed a motion for summary judgment, arguing that plaintiffs are not entitled to enforce the terms of the warranty pursuant to the Magnuson-Moss Act and that they cannot prove any damages because they were able to trade in the vehicle for its fair market value.

## DISCUSSION

We grant a motion for summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986). We draw all reasonable inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Only if there is insufficient evidence to support a jury verdict do we grant a motion for summary judgment. Id. at 248.

### Magnuson-Moss Act

The Magnuson-Moss Act authorizes civil suits by a consumer to enforce the terms of an implied or express warranty. 15 U.S.C. § 2310(d)(1). "Consumer" is defined as

> a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

15 U.S.C. § 2301(3).

As part of the lease transaction Mister Leasing transferred all rights in the warranty to plaintiffs. Even as lessees rather than purchasers of the Hummer, plaintiffs became entitled to enforce the warranty against the warrantor. *See* Diamond v. Porsche Cars North America, Inc., 2002 WL 31155064, *3 (N.D. Ill. 2002) (holding that automobile lessees were entitled to assert rights to the warranty because the lessor transferred all rights to the plaintiff).

Written Warranty

This does not end the inquiry, however. The Magnuson-Moss Act allows enforcement only of an implied or written warranty as defined by the Act. A written warranty is defined as

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).

Defendant does not dispute that it issued a written warranty to Mister Leasing when

selling the Hummer. Instead, it argues that the Act does not allow plaintiffs to enforce the warranty provisions because there was no sale as required by the Act and the transaction between defendant and Mister Leasing was not "for purposes other than resale" of the Hummer.

The warranty delivered from defendant to Mister Leasing is a written warranty as defined by the Act. The terms of the warranty were part of the bargain between defendant and Mister Leasing. It is doubtful that plaintiffs and Mister Leasing would have agreed to the sale if it were not for the warranty. This warranty was issued in connection with the sale of the vehicle from defendant to Mister Leasing. "Sale," as defined by the Act, is not limited to transactions between the warrantor and the ultimate consumer.

The sale was for purposes other than resale. Mister Leasing's vice-president maintains that it would not have purchased the Hummer if it were not for the leasing agreement with plaintiffs. Mister Leasing never intended to add the vehicle to its inventory or advertise it for sale to other parties. Mister Leasing profited from this transaction through the lease agreement. While it is true that Mister Leasing was likely to sell the vehicle after the expiration of the lease (potentially even to plaintiffs), the *purpose* of the transaction between Mister Leasing and defendant was not for resale, but for the lease of the vehicle to plaintiffs.

We recognize that other courts have disagreed with this interpretation of the Magnuson-Moss Act. In Sellers v. Frank Griffin AMC Jeep, Inc., 526 So.2d 147 (Fla. App. 1st Dist. 1988), a Florida appellate court held that Magnuson-Moss did not apply to a pure automobile lease that did not offer a purchase option, because sales and leases give rise to different rights and responsibilities. In Sellers, there was no sale by the manufacturers

incident to the lease agreement and the court determined that to expand Magnuson-Moss to pure leases would require legislative action. *Id.* at 156.

In <u>DiCintio v. DaimlerChrysler Corp.</u>, 768 N.E.2d 1121 (N.Y. 2002), the New York Court of Appeals expanded <u>Sellers,</u> holding that the Act did not apply to a 36-month lease with an option to buy. The court reasoned that the Magnuson-Moss Act is designed to protect *buyers* of products and that by leasing a vehicle, a party takes on fewer obligations and gets fewer rights in return. *Id.* at 1124-25. *See also* <u>Voelker v. Porsche Cars North America, Inc.,</u> 2003 WL 291909 (N.D. Ill. 2003) (citing <u>DiCintio</u> and <u>Diamond</u>, and holding that "the Act only applies to purchased goods and not to leased products"); <u>Corral v. Rollins Protective Services Co.,</u> 732 P.2d 1260 (Kan. 1987) (lease/servicing agreement for an alarm system not subject to Magnuson-Moss Act because it has no characteristics of a sale); <u>D.L. Lee & Sons, Inc. v. ADT Sec. Systems, Mid-South, Inc.,</u> 916 F. Supp. 1571 (S.D. Ga. 1995) ("there must be an identifiable purchase and sale before the provisions of the Magnuson-Moss Act apply"). *But see* <u>Freeman v. Hubco Leasing, Inc.,</u> 324 S.E.2d 462 (Ga. 1985) (a lease that conveys ownership after 48 monthly payments and a final lump sum payment is actually a sale); <u>Henderson v. Benson-Hartman Motors, Inc.,</u> 41 U.C.C. Rep. Serv. 782 (Pa. Ct. of Common Pleas 1983) (lease with most characteristics of a sale should be treated as a sale by the Magnuson-Moss Act).

The Act does not require us to look at the bundle of rights acquired by the purchaser and the lessee. Instead, a plain reading of the Act forces us to simply look for a warranty exchange in connection with a sale. Defendant clearly sold the vehicle to Mister Leasing and, when doing so, made a series of promises in connection with this sale. This is enough for the warranty to meet the first part of the definition of "written warranty" in 15 U.S.C. § 2301(6).

In Diamond, the court did not reach the question of whether the sale to a financing company was a sale under the Act, determining that, in any case, the purpose of the transaction was for resale. Relying heavily on DiCinto, the court reasoned that even though the lessor may collect money from the lessee, the resale of the vehicle is ultimately part of the plan. 2002 WL 31155064 at *5 *quoting* DiCintio, 768 N.E.2d at 1127. The court determined that it was disingenuous for plaintiffs to claim that the financing agent did not purchase the vehicle for resale "merely because its intent was to lease the vehicle before ultimately selling it." *Id; see also* DiCintio, 768 N.E.2d at 1127 (stating that the purchase of the vehicle was not for purposes other than resale because "ultimate resale is presumably an intrinsic part of its plan when it takes title to the vehicle").

Here, the uncontested affidavits of Mister Leasing's vice-president suggest differently. He claims that Mister Leasing's primary purpose in buying the car was to facilitate the lease. Any resale of the vehicle would take place only after plaintiffs had used a considerable percentage of the vehicle's value. Moreover, the courts' reading of the statute in DiCintio and Diamond would render many purchasers of automobiles unable to sue for breach of warranty. Certainly, many customers plan on selling or trading in a vehicle after years of use. The Act requires us to look for the reason that the vehicle was purchased, and the reason was the subsequent lease to plaintiffs, not resale.

This reading of the Magnuson-Moss Act best serves Congress' goal of "better protecting consumers." H.R. Rep. 93-1107 (June 13, 1974). Plaintiffs here fit squarely within the definition of "consumer" in that they are entitled to enforce the warranty by the terms of 15 U.S.C. § 2301(3). If we then determine that this warranty does not qualify as a written

warranty under the Act, there is nothing for the plaintiffs to enforce. Moreover, when selling the Hummer to Mister Leasing, defendant was aware that Mister Leasing was facilitating a lease and transferring possession of the vehicle to plaintiffs. It knew that plaintiffs would be the users of the vehicle and the only party who would likely seek to enforce the warranty. If they are unable to do so, the assurances of the manufacturer are empty – no party would be able to enforce the warranty.[1]

This is not to say that all lessees of automobiles should be entitled to enforce the manufacturer's warranty. Each lessee gets the rights that he bargains for. In situations like this, however, where the sale of a vehicle is merely to facilitate a lease, the issuance of the warranty accompanies this sale, and the lessor explicitly transfers its rights in the warranty to the lessee – the lessee is protected by the Magnuson-Moss Act.

## Implied Warranty

While not specifically briefed by the parties, we should look at plaintiff's claim for breach of implied warranty. No contractual privity exists between plaintiffs as lessees and defendant as the manufacturer. Implied warranty claims under Illinois law traditionally required privity between the claimant and the warrantor. Szajna v. General Motors Corp., 503 N.E.2d 760, 762 (Ill. 1987). The Illinois Supreme Court, however, adopted the rule that privity is not required where a consumer seeks to bring a claim based on an implied warranty if a Magnuson-Moss warranty is given. Id. at 769. Because we conclude that plaintiffs can enforce the terms of the written warranty, they may also seek to enforce an implied warranty.

---

[1]To strictly follow the holdings of DiCintio or Diamond and apply them to the facts here, we would need to determine either that there was no sale or that there was no written warranty. In either case, that would render Mister Leasing, the actual purchaser of the vehicle, unable to bring a claim for breach of warranty. Defendant would have issued a warranty that was a fundamental part of the bargain, yet entirely illusory merely because Mister Leasing chose to lease the vehicle, rather than use it itself.

## Damages

Defendant relies on Valenti v. Mitsubishi Motor Sales of America, Inc., 773 N.E.2d 1199 (Ill. App. 1st Dist. 2002), arguing that plaintiffs cannot prove damages because they sold the vehicle for fair market value. In Valenti, the plaintiff purchased a vehicle, drove it for two-and-a-half years and 17,290 miles before trading in the vehicle. Id. at 1203. Plaintiff did not contradict defendant's assertions that she had sold the car for its fair market value. Id. at 1202. The court determined that she could not allege damages with enough specificity to survive a summary judgment motion because it appeared that, following the sale of the vehicle, she had no losses. Id. at 1202-03.

There are important differences between this case and Valenti. First, plaintiffs dispute that they received fair market value for the Hummer at trade-in. Both parties present differing estimates of the value of the vehicle, an issue of material fact.[2] Second, in Valenti, the plaintiff's only allegations were that she had lost money through the ownership of the vehicle. 773 N.E.2d at 1203. In the present case, plaintiffs have alleged that the vehicle was defective from the commencement of the lease agreement.

The measure of damages for a breach of warranty claim is the difference between the value of the property as warranted and the actual value on the date of the breach. Wheelock v. Berkeley, 27 N.E. 942 (1891); Felde v. Chrysler Credit Corp., 580 N.E.2d 191 (1991). This means that damages should be the difference in value at the time of plaintiff's acceptance. Felde, 580 N.E.2d at 198. Plaintiffs here claim that the vehicle was worth substantially less

---

[2]Defendant submits that a printout of the Kelly Blue Book value was $43,775.00. Plaintiffs submit the affidavit of an expert witness, Joseph Pennacchio, who assessed the value of the Hummer and stated that $49,000 did not constitute fair market value, and that it should have been $54,610.

than the lease price at the time that they took possession. The fact that they were able to trade in the vehicle for a price similar to the Kelly Blue Book value is certainly circumstantial evidence as to the quality of the vehicle. At this time, however, a material issue of fact as to whether the vehicle was damaged still exists.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 10, 2003.